**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| UNITED STATES of AMERICA, | ) |
| | ) |
| v. | )     Criminal Action No. |
| | )     18-10329-NMG |
| MIGUEL ANGEL MORALES TORRES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

MEMORANDUM & ORDER

GORTON, J.

Defendant Miguel Angel Morales Torres ("Morales Torres" or "defendant") has been indicted on one count of Possession with Intent to Distribute One Kilogram or More of Heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(i). The indictment also includes a drug forfeiture allegation.

Before the Court is defendant's motion to suppress all evidence obtained as a result of an automobile stop conducted in August, 2018. For the reasons that follow, that motion will be denied.

I. **Background**

A. **The Facts**

In August, 2018, law enforcement officers from the Drug Enforcement Administration ("the DEA") engaged a cooperating witness ("the CW") to assist in the investigation of Cesar Rodrigo Guerra-Garcia ("Guerra-Garcia"), a suspected multi-

kilogram-level narcotics distributor.  The CW had been working with the DEA for about a year and had previously provided reliable and corroborated information to other law enforcement agencies in other successful drug investigations.  In a series of recorded telephone calls and text messages, Guerra-Garcia agreed to deliver four kilograms of fentanyl to the CW in Massachusetts for a total purchase price of $220,000.

On August 18, 2018, Guerra-Garcia informed the CW that the drugs would be delivered by a courier who was on his way to Boston and that the courier would contact the CW to coordinate the pickup.  On August 19, 2018, the CW received a telephone call from the courier who spoke in Spanish.  They agreed to meet in Boston.  Later that day, the CW received a telephone call from Guerra-Garcia who informed the CW that the courier had arrived in Boston and would meet the CW the following day around noon.

On August 20, 2018, the CW received another telephone call from the courier.  In a series of calls and text messages, the two arranged the address of 94 Granite Avenue, Milton, Massachusetts, as the pickup location and agreed to meet around noon.  Law enforcement began surveillance of the pickup site shortly thereafter.

Around 12:15 P.M., officers observed a white tractor trailer drive slowly by a "park and ride" area near the pickup

location.  They saw two Hispanic men in the vehicle who were looking around as they passed the "park and ride" area.  The tractor trailer briefly stopped at a parking lot past the pickup location, turned around and drove back to the pickup location.

Around that same time, the CW received a telephone call from the courier who said that he was at the meeting location. The officers then stopped the tractor trailer.  Morales Torres was the driver of the vehicle.  He and his passenger each presented their driver's license to the officers.  The officers reported that both men appeared nervous and had conflicting stories about where they had come from and where they were going.  The officers allege that defendant stated that they were lost and trying to get to Boston while the passenger said that they were trying to get to Rhode Island.  The officers claim that when the men were asked for more specifics about their destination, neither could answer.

While the officers were speaking with Morales Torres and the passenger, other law enforcement agents instructed the CW to place several calls to the courier's telephone.  The officers speaking with defendant noticed that a cellphone inside the tractor trailer rang multiple times during their conversation. The officers then removed Morales Torres and the passenger from the vehicle and conducted a search of the tractor trailer.  They discovered a black plastic bag in a cabinet behind the driver's

seat which contained four packages of tan powder wrapped in
green cellophane and black tape.  A field-test of the powder
revealed that it contained heroin.  Morales Torres and the
passenger were arrested and transported to the State Police
Barracks in Boston, Massachusetts.

### B.    The Parties' Arguments

Defendant claims that the drugs and his subsequent
incriminating statements were obtained as the result of an
unlawful stop and search of the tractor trailer and thus should
be suppressed.  He contends that 1) the officers lacked
reasonable suspicion to stop the tractor trailer, 2) not enough
information is known about the CW to determine his or her
reliability and thus his or her information could not support a
finding of reasonable suspicion and 3) he was detained and his
vehicle was searched without probable cause.

The government responds that the officers had reasonable
suspicion to stop the vehicle based on the totality of the
circumstances, particularly based on 1) the CW's communications
with Guerra-Garcia and the courier in Spanish and 2) the DEA
agents' observation of a tractor trailer arriving at the pickup
location at the same time the courier called the CW to announce
his arrival.  Moreover, the government asserts that the stop was
reasonable in both scope and duration.  Finally, the government
contends that the officers had probable cause to search the

tractor trailer because a cellphone rang inside the vehicle at the same time the CW placed several calls to the courier's telephone.

## II.  **Motion to Suppress**

### A.    **Legal Standard**

Even without probable cause to make an arrest, police officers may conduct a brief investigatory stop for the purposes of crime prevention and detection. Terry v. Ohio, 392 U.S. 1, 22 (1968); United States v. Jones, 700 F.3d 615, 621 (1st Cir. 2012) (applying to stops of automobiles).  Such encounters must be justified at their inception and be reasonable in scope and duration. United States v. Pontoo, 666 F.3d 20, 26 (1st Cir. 2011); United States v. McCarthy, 77 F.3d 522, 530 (1st Cir. 1996) (explaining that "whether a particular investigatory stop is too long turns on a consideration of all relevant factors, including the law enforcement purposes to be served by the stop . . . [,] the time reasonably needed to effectuate those purposes . . . [and] whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly" (internal quotation marks omitted) (quoting United States v. Sharpe, 470 U.S. 675, 685-86 (1985))). An encounter is justified at its inception if the officer has "reasonable, articulable suspicion that criminal activity is

afoot." United States v. Romain, 393 F.3d 63, 71 (1st Cir.

2004).

> In making a reasonable-suspicion determination, a court
>
> must look at the totality of the circumstances . . .
> to see whether the detaining officer has a
> particularized and objective basis for suspecting
> legal wrongdoing . . . .  [O]fficers [may] draw on
> their own experience and specialized training to make
> inferences from and deductions about the cumulative
> information available to them.

United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal

quotation marks and citations omitted); United States v. Trullo,

809 F.2d 108, 111 (1st Cir. 1987) (stating that "the

circumstances before [the officer] are not to be dissected and

viewed singly; rather they must be considered as a whole"

(alteration in original) (citing United States v. Magda, 547

F.2d 756, 758 (2d Cir. 1976), cert. denied, 434 U.S. 878

(1977))).  Although an officer must rely on more than a hunch,

the likelihood of criminal activity "need not rise to the level

required for probable cause". Id.

Reliable information from a confidential source can give

authorities the requisite reasonable suspicion to conduct a

Terry stop. United States v. Monteiro, 447 F.3d 39, 44 (1st Cir.

2006).

Where officers have probable cause to believe that an

automobile contains contraband, they may conduct a warrantless

search of the vehicle and any containers therein and seize any

-6-

such evidence. <u>California</u> v. <u>Acevedo</u>, 500 U.S. 565, 580 (1991).
This is known as the "automobile exception" to the general
warrant requirement of the Fourth Amendment to the United States
Constitution.  Probable cause exists where the totality of the
circumstances demonstrates "a fair probability that contraband
or evidence of a crime will be found in a particular place".
<u>United States</u> v. <u>Tanguay</u>, 787 F.3d 44, 50 (1st Cir. 2015)
(quoting <u>Illinois</u> v. <u>Gates</u>, 462 U.S. 213, 238 (1983)).

If either the initial stop or subsequent search of the
vehicle is unlawful, any evidence seized as a result thereof
must be suppressed unless some exception to the exclusionary
rule applies. <u>See</u> <u>United States</u> v. <u>Camacho</u>, 661 F.3d 718, 728-29
(1st Cir. 2011).

**B.  Application**

The officers had reasonable suspicion to stop the tractor
trailer.  The officers knew that the courier was supposed to
arrive around noon at the pickup location because of his
communications with the CW.  The CW is apparently a reliable
source based on his or her previous cooperation with law
enforcement in other drug investigations and thus the
information provided by that source could provide the reasonable
suspicion necessary to stop the vehicle.

The CW received a call from the courier around noon stating
that he had arrived at the pickup location and at that same time

-7-

the officers observed the tractor trailer drive slowly past that
location.  The officers saw that two Hispanic men were in the
vehicle and knew that the courier had spoken to the CW in
Spanish.  Finally, they watched the tractor trailer drive past
the pickup location, turn around and drive back toward the
pickup location while the two men looked around for someone or
something.  Based on the totality of those facts, as well as the
training and experience of the investigating officers, they had
a particularized and objective basis to believe that the driver
of the vehicle or his passenger was the drug courier.

    Moreover, once stopped, the seizure of the tractor trailer
and its occupants was no longer than reasonably necessary to
effectuate the purpose of that stop.  While the stop lasted
about 10 minutes, the officers asked the occupants numerous
questions about their trip and where they were going in order to
determine whether either was the courier.  The fact that Morales
Torres and his passenger gave conflicting answers to those
inquiries entitled the officers to ask follow-up questions to
confirm or dispel their suspicion which reasonably prolonged the
length of the stop.  The officers also needed time to allow the
CW to call the courier's telephone in order to determine whether
that phone was present in the vehicle.

    Finally, the officers had probable cause to search the
tractor trailer.  Not only were Morales Torres and his passenger

-8-

acting nervous and giving suspicious answers but a cellphone
rang inside the vehicle several times throughout their
conversation while the CW was placing calls to the courier's
telephone.  The combination of those circumstances would lead a
reasonable officer to believe there was a fair probability that
either Morales Torres or his passenger was the drug courier and
that the tractor trailer likely contained contraband.  The
officers were therefore entitled to detain them and search the
tractor trailer for narcotics even without a warrant.  Once the
officers discovered what they reasonably believed to be
narcotics, they were permitted to seize that evidence.

Because neither the initial stop nor the subsequent search
of the tractor trailer was unlawful, none of the statements made
by defendant thereafter while in custody is excludable as "fruit
of the poisonous tree".  See Camacho, 661 F.3d at 728-29.

Accordingly, defendant's motion to suppress will be denied
in its entirety.

### C.    Evidentiary Hearing

An evidentiary hearing is required only if the moving party

> makes a sufficient threshold showing that material facts
> are in doubt or dispute, and that such facts cannot
> reliably be resolved on a paper record.

United States v. Jimenez, 419 F.3d 34, 42 (1st Cir. 2005).
Criminal defendants are not entitled to evidentiary hearings as
a matter of course.  See United States v. Panitz, 907 F.2d 1267,

1273 (1st Cir. 1990) ("[A] criminal defendant has no absolute or presumptive right to insist that the district court take testimony on every motion.").

The defendant has not made a threshold showing that there are any material facts in dispute.  The only thing in dispute is whether the officers had reasonable suspicion or probable cause based on those facts which has already been resolved on the record.  An evidentiary hearing is therefore unwarranted.

### ORDER

For the foregoing reasons, defendant's motion to suppress (Docket No. 40) is **DENIED**.


**So ordered.**


/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 4, 2019